7767

STATE v. CUNNINGHAM.

1. JURY.—The jury commissioners do not err when they lay aside names drawn for the petit jury because one is reputed to be of unsound mind and to be tried at that Court, because they do not know another and he is said to have moved away, and because another is said to be a drunkard.

2. MURDER.—Testimony tending to show that a defendant shot his wife in the neck, that she died a few days after, that such wound would have caused death, will support a verdict of murder.

Before DANTZLER, J., Greenwood, March term, 1910. Affirmed.

Indictment against Jackson Cunningham for murder. Defendant appeals on the following exceptions:

I. "Because his Honor erred in refusing to quash the array of petit jurors, the testimony clearly showing that the jury was not drawn in accordance with the statute law of this State, in that men were drawn to serve as jurors

who were competent, and who were laid aside without just cause or excuse.

II. "Because the undisputed testimony showed that the jury commissioners did not exercise their own judgment, but allowed outsiders to influence them in the selection of the jury contrary to law.

III. "Because the Court erred in not finding, as matter of fact, from the testimony introduced, that men, qualified and competent to serve as jurors, were laid aside by the jury commissioners and other men drawn in their places, contrary to law, thus allowing the jury commissioners to select the jury, instead of requiring them to draw a jury according to the law of the land.

IV. "Because the law relating to the manner in which names are to be drawn out of the jury box and returned for service is mandatory, and the Court erred in holding that the jury commissioners could exercise their discretion.

V. "Because the Court erred in holding that the words, 'otherwise disqualified,' gave the jury commissioners power to reject jurors legally drawn, when the testimony in this case showed, beyond question, that at least two of the jurors so drawn and rejected were competent and qualified jurors, and further showed that no reason was given by the jury commissioners for rejecting them, further than the fact that they claimed that they did not know the men; and said testimony also clearly showed that the jury commissioners did not reject them because of any disqualification, but that their action was arbitrary, and the Court erred in not so holding, and erred in not quashing the array of petit jurors.

V. "Because the Court erred in refusing to direct the jury to find a verdict of 'Not guilty,' on the ground that the testimony offered by the State failed to show that the wound inflicted by the defendant caused the death of the deceased.

VI. "Because the testimony offered by the State having failed to show that the death of the deceased was caused by the wound inflicted upon her by the defendant, there was an utter failure of proof on the part of the State to establish the guilt of the defendant, and his Honor should have granted motion to direct a verdict of 'Not guilty.'"

*Mr. Wm. N. Graydon,* for appellant.

*Solicitor Cooper,* contra.

January 30, 1911. The opinion of the Court was deliv-ered by

MR. JUSTICE GARY. This is an appeal from the sentence of death imposed upon the defendant for murder.

The exceptions will be reported.

When the case was called for trial, the defendant challenged the array of petit jurors, but his Honor, the presiding Judge, refused to quash the panel.

The first question that will be considered is, whether such ruling was erroneous.

The clerk of the court, upon being duly sworn, testified that three names were laid aside, when drawn out of the box. One, Pope Benjamin, was rejected on account of his mental condition, and the fact that he was to be tried, at that term of the Court; the name of B. L. Johnson was laid aside because the commissioners did not know him, and some one said he was a Johnson that had moved out of the county; and another, Franklin, was rejected, on the ground that the commissioners did not know him, and some one said he was a drunkard.

There was other testimony to the same effect.

Section 2, of the Act of 1902, 23 Stat., 1066, provides: "That the county auditor, county treasurer and the clerk of court shall prepare a list of the qualified electors, under the provision of the Constitution, between the ages of

twenty-one and sixty-five years, and of good moral character, as they may deem otherwise well qualified to serve as jurors, being persons of sound judgment and free from all legal exceptions."

Section 4 provides that the jury commissioners shall draw, from the jury box, eighteen ballots, containing the names of eighteen persons, who shall constitute the grand jury; that "if there shall be drawn from said box, a ballot containing the name of any person, not between the ages of twenty-one and sixty five years, or not of good moral character, or who has died, or who has removed from the county, or is otherwise disqualified to serve as a juror, such ballot shall be destroyed, and such name struck from the said list and another ballot drawn, and so on until the eighteen are secured."    The petit jury is drawn in the same manner.

Section 7 is as follows: "That all jurors shall be selected, by drawing ballots from the said jury box, and, subject to the exceptions hereinbefore contained, the persons whose names are on the ballots so drawn shall be returned to serve as jurors."

Section 14 is as follows: "That the jurors drawn and summoned under the provisions of this act, must have the qualifications that are now, or may hereafter be, prescribed by law."

In considering a similar question arising under said sections, the Court, in the case of *State* v. *Mills,* 79 S. C. 187, 60 S. E. 664, used this language: "When the testimony of the auditor is considered in its entirety, we are unable to discover anything, except the honest effort of a faithful officer, to allow none but those possessing the qualifications prescribed by statute, to serve as jurors, for which he is to be commended.    The jury commissioners are allowed the same discretion, under Section 4, as is conferred upon them by Section 2.

"It is not contended that any of the persons drawn to serve as jurors were disqualified, and even if there were irregu-

larities, they are not such as to render the venire illegal. *Rhodes* v. *R. R.,* 68 S. C. 494, 47 S. E. 728; *State* v. *Smalls,* 73 S. C. 519; 53 S. E. 976; *Hutto* v. *R. R.,* 75 S. C. 295; *State* v. *Smith,* 77 S. C. 248."

Thus showing that the ruling of the presiding Judge, in this respect, was free from error.

The second question is whether there was error on the part of the Circuit Court in refusing to direct the jury, to render a verdict of not guilty, on the ground that the testimony failed to show, that the wound inflicted by the defendant, caused the death of the deceased.

The testimony was to the effect that the defendant shot his wife through the neck, on Thursday night, and that she died the following Sunday.

Dr. J. B. Owens testified as follows:

"By the Solicitor: Are you a practicing physician? Yes, sir. You heard Mr. Wells' statement, as to the wound on the person of Mina Cunningham? Yes, sir. State whether or not, in your opinion as a physician, that wound was sufficient to cause death. Yes, sir; I think it was."

There was other testimony of like import, but we deem it unnecessary to refer to it, as the foregoing shows that the exception raising this question cannot be sustained.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed, and that the case be remanded to that Court, for the purpose of having another day assigned for the execution of the sentence.